IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 1, 2024

## IN RE DAXLEIGH F ET AL.

**Appeal from the Juvenile Court for Washington County**
No. 54249, 54250    Sharon M. Green, Judge

_____

**No. E2023-00749-COA-R3-PT**

_____

This is a termination of parental rights case. Appellant/Mother appeals the trial court's termination of her parental rights on the grounds of: (1) abandonment by failure to support; (2) persistence of the conditions that led to the children's removal; and (3) failure to manifest an ability and willingness to assume legal and physical custody of or financial responsibility for the children. The trial court also determined that termination of Mother's parental rights is in the children's best interests. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined.

Mark W. McFall, Johnson City, Tennessee, for the appellant, Olivia D.[1]

Samuel G. Hall, Kingsport, Tennessee, for the appellees, Anna C. and Rockie C.

### OPINION

### I. Background

Appellant Olivia D. ("Mother") and Edward F. ("Father") are the biological parents of the two children at issue in this appeal, Daxleigh F. (d/o/b March 2018) and Ayva F.[2]

---

[1] In cases involving minor children, it is the policy of this Court to redact the parties' names to protect their identities.

[2] Mother and Father's respective parental rights to the Children were terminated in the same order. Although he was appointed counsel to represent him in an appeal, Father did not file a notice of appeal. After Mother filed her notice of appeal, Father's appointed counsel filed a motion to withdraw as counsel.

(d/o/b August 2019) (together with Daxleigh F., the "Children"). Appellant's mother is Anna C. ("Grandmother", and her step-father is Rockie C. ("Grandfather," and together with Grandmother, "Grandparents," or "Appellees").

On January 22, 2020, the Tennessee Department of Children's Services ("DCS") received a referral, alleging that the Children were the victims of physical abuse perpetrated by Father. DCS caseworkers noted bruising on both Children; with Mother's permission, the Children were removed to Grandparents' custody on February 7, 2020. On February 14, 2020, DCS filed a dependency and neglect petition, wherein it averred that the Children were dependent and neglected under Tennessee Code Annotated sections 37-1-102(b)(13)(F),(G) (defining a "dependent and neglected child" as one: "(F) Who is in such condition of want or suffering or is under such improper guardianship or control as to injure or endanger the morals or health of such child or others;" or "(G) Who is suffering from abuse or neglect"). On February 9, 2020, the Juvenile Court for Washington County ("trial court") entered a protective custody order, which kept the Children in Grandparents' custody and ordered no contact between Father and the Children. Following a preliminary hearing, the trial court entered an order on February 27, 2020, finding probable cause that the Children were dependent and neglected and ordering the Children to remain in Grandparents' custody with no contact from Father.

The trial court held an adjudicatory hearing on August 4, 2020. In its August 27, 2020 order, the trial court adjudicated the Children to be dependent and neglected. The order states that

> [M]other, through counsel, stipulated to a finding of dependency and neglect based upon failure to protect. The [M]other agreed that she noticed bruises on the [C]hildren's faces but took no action. The [M]other reported that she was afraid to contact [DCS] and file a report. The [M]other was afraid [DCS] would remove the [C]hildren from the home.

The trial court continued custody with the Grandparents and ordered Mother to "continue in therapy," and "complete a Clinical Parenting Assessment and follow all recommendations." The trial court further ordered that "[M]other is prohibited from allowing [Father] to return to the home where the [C]hildren are present."

Following a review of the case, on January 6, 2021, the trial court entered an order, wherein it noted that the DCS caseworker "testified that the [M]other is not cooperating." Specifically, the trial court held that

Therein, counsel notified this Court that Father had been noticed of his right to appeal but had chosen not to file an appeal to this Court. By order of January 24, 2024, this Court granted Father's appointed counsel's motion to withdraw. Having failed to perfect an appeal, Father is not a party to this appeal. Accordingly, we will not discuss the trial court's findings regarding Father except to the extent necessary to adjudicate Mother's appeal.

- 2 -

[a]ssessments have been scheduled . . .[,] and the [M]other has failed to participate. The [M]other has missed two domestic violence intervention appointments. [The case worker] requested to close the case and exit [sic] custody to [Grandparents]. The [M]other still has tasks to complete before she can regain custody of the [Children].

The trial court conducted another review hearing on February 9, 2021, and entered an order on March 3, 2021. In that order, the trial court found that Mother had not completed parenting education and had not attended outpatient treatment since October 22, 2020. Although the trial court noted that Mother completed domestic violence intervention, it held that she "has not maintained consistent contact with the [C]hildren." The court specified that, since February 2020 (when the Children were removed to the Grandparents' custody), Mother had eight in-person visits and five video calls with the Children. The court further noted that Mother was still using alcohol and was still in contact with Father. Based on the foregoing, the trial court granted "full legal and physical custody" of the Children to Grandparents and closed the dependency and neglect case. Mother did not appeal the dependency and neglect order.

Giving rise to the immediate appeal, on May 28, 2021, Grandparents filed a petition to terminate Mother and Father's respective parental rights. The trial court appointed a *guardian ad litem* for the Children and an attorney for Mother (on her affidavit of indigency).

On November 17, 2021, Mother filed a motion to dismiss the petition to terminate her parental rights. In response, Grandparents filed an amended petition on December 14, 2021. As grounds for termination of Mother's rights, Grandparents alleged: (1) abandonment by failure to visit and support, Tenn. Code Ann. § 36-1-113(g)(1) (as defined by section 36-1-102(1)(A)(i)); (2) persistence of the conditions that led to the Children's removal, Tenn. Code Ann. § 36-1-113(g)(3); and (3) failure to manifest willingness and ability to assume physical custody or financial responsibility for the Children, Tenn. Code Ann. § 36-1-113(g)(14). Grandparents also averred that termination of Mother's parental rights was in the Children's best interests.

After several delays and multiple continuances, Appellees' petition was heard over two days, *i.e.*, August 6, 2022 and February 20, 2023. By order of April 19, 2023, the trial court terminated Mother's parental rights on all grounds averred in Appellees' petition, *i.e.* abandonment by failure to visit and support, persistence of conditions, and failure to manifest a willingness and ability to assume custody. The trial court also held that termination of Mother's parental rights is in the Children's best interest. Mother appeals.

## II. Issues

As stated in her brief, Mother raises the sole issue of:
Whether the Juvenile Court of Johnson City violated Appellant's procedural due process rights by denying her the right to attend the final day of trial by telephonic or video conference means.

Although Mother raises no issues concerning either the grounds for termination of her parental rights or the trial court's finding that termination of same is in the Children's best interests, the Tennessee Supreme Court has instructed this Court that, "[A]ppellate courts must review a trial court's findings regarding all grounds for termination and whether termination is in a child's best interest, even if a parent fails to challenge these findings on appeal." *In re Carrington H.*, 483 S.W.3d 507, 511 (Tenn. 2016). Accordingly, if we determine that Mother's due process rights were satisfied, we will then proceed to address the following additional issues:

1. Whether there is clear and convincing evidence to support the trial court's termination of Mother's parental rights on at least one of the grounds found by the trial court.[3]
2. If so, whether there is clear and convincing evidence to support the trial court's finding that termination of Mother's parental rights is in the Children's best interests.

## III. Standard of Review

It is well-settled that:

A parent's right to the care and custody of [his or] her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clause of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547-48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578-79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as parens patriae has a special duty to protect minors....' Tennessee law, thus, upholds the [S]tate's authority as

---

[3] Although only one ground must be proven by clear and convincing evidence in order to terminate a parent or guardian's parental rights, the Tennessee Supreme Court has instructed this Court to review every ground relied upon by the trial court to terminate parental rights in order to prevent "unnecessary remands of cases." *In re Angela E.*, 303 S.W.3d 240, 251 n. 14 (Tenn. 2010). Accordingly, if we reach the question, we will review all of the grounds relied upon by the trial court.

parens patriae when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also* ***Santosky v. Kramer***, 455 U.S. 745 (1982); *In re Angela E.*, 303 S.W.3d at 250.

*In re Carrington H.*, 483 S.W.3d at 522-23 (footnote omitted).

Termination of parental rights proceedings are governed by statute in Tennessee, *In re Kaliyah S.*, 455 S.W.3d 533, 541 (Tenn. 2015), and the statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g))) (internal quotation marks omitted).

Tennessee Code Annotated section 36-1-113 governs the termination of parental rights. It provides, in pertinent part:

(c) Termination of parental or guardianship rights must be based upon:

(1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and (2) That termination of the parent's or guardian's rights is in the best interests of the child.

Tenn. Code Ann. § 36-1-113(c). Accordingly, adjudication of a petition to terminate parental rights proceeds in two stages. First, the petitioner must establish at least one of the grounds for termination listed in Tennessee Code Annotated section 36-1-113(g). "If the petitioner establishes grounds for termination, only then does the court determine whether termination is in the best interests of the child." *In re Angela E.*, 303 S.W.3d at 251. As this Court has explained:

The threshold issue in every termination case is whether the parent whose rights are at stake has engaged in conduct that constitutes one of the grounds for termination of parental rights in Tenn. Code Ann. § 36-1-113(g). If the answer is "yes," the trial court must then determine whether the child's interests will be best served by terminating the parent's parental rights. If the answer is "no," the court should proceed no further and should dismiss the termination petition.

*In re Adoption of Kleshinski*, No. M2004-00986-COA-R3-CV, 2005 WL 1046796, at *16 (Tenn. Ct. App. May 4, 2005) (quoting *In re Adoption of Muir*, No. M2002-02963-COA-

- 5 -

R3-CV, 2003 WL 22794524, at *3 (Tenn. Ct. App. Nov. 25, 2003)).

"The party petitioning for termination carries the burden of making both of these showings[, *i.e.,* the existence of at least one ground for termination and that termination is in the child's best interest]." *In re Angela E.*, 303 S.W.3d at 250. This ensures that each parent "receives the constitutionally required 'individualized determination that a parent is either unfit or will cause substantial harm to his or her child before the fundamental right to the care and custody of the child can be taken away.'" *Id.* (quoting *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999)). Because of the profound consequences of a decision to terminate parental rights, a petitioner must prove both elements of termination by clear and convincing evidence. *See* Tenn. Code Ann. § 36-1-113(c)(1); *Santosky*, 455 U.S. at 747-48, 102 S. Ct. 1388; *In re Kaliyah S.*, 455 S.W.3d at 552. The heightened burden of proof minimizes the risk of an erroneous decision. *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). The clear and convincing evidence standard eliminates any "serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Clear and convincing evidence must produce a firm belief or conviction in the fact finder's mind about the truth of the facts to be established. *In re Justice A.F.*, No. W2011-02520-COA-R3-PT, 2012 WL 4340709, at *6 (Tenn. Ct. App. Sept. 24, 2012); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001). This Court has explained that trial courts apply this standard in a two-step process, distinguishing between the individual underlying facts and the aggregate of those facts. Specifically, after the trial court finds the individual underlying facts by a preponderance of the evidence, it then considers whether "the combined weight of those facts . . . amount[s] to clear and convincing evidence." *In re Kaliyah S.*, 455 S.W.3d at 555-56 (citing *In re Adoption of Kleshinski*, 2005 WL 1046796, at *17).

To review trial court decisions, appellate courts use a similar two-step process, to accommodate both Rule 13(d) of the Tennessee Rules of Appellate Procedure and the statutory clear and convincing standard. First, appellate courts review each of the trial court's specific factual findings *de novo* under Rule 13(d), presuming each finding to be correct unless the evidence preponderates against it. *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013); *In re Justice A.F.*, 2012 WL 4340709, at *7. Second, appellate courts determine whether the combination of all of the individual underlying facts, in the aggregate, constitutes clear and convincing evidence. *In re Taylor B.W.*, 397 S.W.3d at 112; *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re Justice A.F.*, 2012 WL 4340709, at *7. Whether the aggregate of the individual facts, either as found by the trial court or supported by a preponderance of the evidence, amounts to clear and convincing evidence is a question of law, subject to de novo review with no presumption of correctness. *See In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *see also In re Samaria S.*, 347 S.W.3d 188, 200 (Tenn. Ct. App. 2011). As usual, the appellate court reviews all other conclusions of law de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d at 246.

## IV. Due Process

As set out above, Mother's sole appellate issue is whether her procedural due process rights were violated when the trial court denied her the right to attend the final day of trial by telephonic or video means. Specifically, Mother argues that,

> when the second and final day of trial commenced, Mother's attorney informed the [trial court] that Mother was in Louisiana, and she was unable to travel to Johnson City due to transportation issues. The [trial court] affirmatively denied the request of Mother's attorney that Mother be allowed to appear by video means at the second and final day of trial. Mother was denied her procedural due process "right to be heard before being condemned to suffer grievous loss"—the termination of the parental rights to her children—and in denying Mother the right to appear by video means, the [trial court] violated a "principle basic to our society." *See Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18, 28 (1976).

As noted above, the hearing on Appellees' petition to terminate Mother's parental rights commenced on August 5, 2022. Mother was present at that hearing, but did not testify. On August 5, the trial court heard testimony from Grandparents, and Mother's attorney was allowed cross-examination. The Appellees' rested their case at around 5:00 p.m. Due to the late hour, the parties, through their respective attorneys, agreed to continue the hearing until 8:00 a.m. on August 18, 2022. However, due to numerous factors, the matter was ultimately continued to February 20, 2023. As set out in a September 6, 2022 order granting one of Mother's motions for continuance, the trial court explained:

> This matter came to be heard on August 26, 2022, via teleconference . . . with the participation of Erin McArdle, attorney for [Mother] and Mark Harris, attorney for [Grandparents] . . . [and the] Guardian ad Litem. . . .
>
> 1. This matter was scheduled for hearing on the termination of Parental Rights on Friday, August 26, 2022 at 1:00 p.m.
> 2. That the first day of trial was heard on August 5, 2022, at which time [Mother] was present. [Appellees] finished putting on their proof. That due to the late hour, all parties agreed that the remainder of this hearing should be continued. All parties agreed to rescheduling this matter until August 18, 2022 at 8:30 a.m.
> 3. Thereafter, a Motion to Continue was filed by [Mother]. Due to [Mother's] transportation issue, one of the witnesses testing positive for COVID-19, and the request of Attorney Mark Harris to be able to cross exam[ine] [Mother] in person, this matter was continued to August 26, 2022.
> 4. On Thursday, August 25, 2022, [Mother], by and through her attorney, Erin McArdle, filed a second Motion to Continue. This Motion was based

on [Mother] continuing to have transportation issues and being unable to attend the scheduled hearing in person.

5. On Friday, August 26, 2022 at 8:30 a.m., a conference call was held, wherein Attorney McArdle explained that [Mother] was unable to have her vehicle repaired by this date; that her vehicle was waiting on repairs through her insurance company; that it is unknown when the repairs will be completed; that at this time she could not afford alternate transportation, but could do so by the end of the month. . . . Attorney Mark Harris and [the] Guardian ad Litem . . . both objected to a continuance in this matter. Both attorneys expressed concern that this matter had been previously continued at the request of [Mother]; that [Mother] had notice of this hearing and is choosing not to appear; and that both attorneys feel like she has waived her right to participate in the hearing by not appearing.

6. That the option of holding part of [the] hearing today in reference to [Mother's] witnesses and then continuing the portion of the hearing regarding [Mother's] testimony was discussed. The attorneys agreed that they would rather try the remainder of this case all together rather than piecemeal.

Based on the foregoing, the trial court granted Mother's motion for continuance "to allow [Mother] to be able to attend the hearing in person." However, the trial court cautioned that

> this is the second continuance afforded to [Mother] in order to allow her to participate in person. That this continuance is granted also due to [Appellee's] counsel['s] request to be able to cross exam[ine] her in person and to hear her testimony in person. That if [Mother] fails to appear at the next scheduled hearing, her lack of transportation will not be considered a valid reason for her not appearing; that [Mother] will have enough notice between now and the scheduled hearing date to make appropriate transportation arrangements to secure her attendance at the hearing; and if [Mother] does not appear, this court will consider that as a waiver of her rights to participate in the hearing.

At the outset of the February 20, 2023 hearing, Mother's attorney, Ms. McArdle, stated that Mother had notice of the hearing, to-wit: "[A]s far as knowing the dates . . . immediately upon any reschedules I texted [Mother], probably within the first five minutes of us having any conversations, so [Mother] did have knowledge of the court date today." Despite notice, Mother did not appear on February 20, 2023. Mother's attorney explained that

> I think it was last, early last week, that I received notice that my client would be unable to be here, which I know there's going to be some objections, so I

had notified Counsel of that issue and we understand that we're all here today ready to proceed. My client has had car trouble. She has now moved to Louisiana and is in a treatment facility, she was in a treatment facility until last week . . . and is now in Baton Rouge, Louisiana. I've given that information to Counsel, so they're very aware of where she's at and that she is not going to be here, so I do have her available by phone, however, I respect the Court's last ruling [*i.e*, the September 6, 2022 order, *supra*] . . . so I'm here asking the Court to allow us to participate . . . by Zoom or phone.

Noting the trial court's September 6, 2022 order that Mother's failure to appear in person would constitute a "waiver of her rights to participate in the hearing," Grandparents' attorney, Mr. Harris, objected to a continuance and to Mother's participation by telephone or Zoom.

In ruling on the question of whether Mother would be allowed telephonic or video participation, the trial court read into the record the section of its September 6, 2022 order that is set out above. The trial court further noted that since entry of the September 6, 2022 order, it had reset the hearing "to October 5th, October 6th, and we haven't had a hearing until now." Noting its ruling that Mother's failure to attend would constitute a waiver of her right to participate, the trial court denied "the request of [Mother] to participate by telephone, or by Zoom . . . ." The trial court explained that Mother is "not in any kind of treatment," and she was "aware of the court date." Although the trial court conceded that the waiver of Mother's right to participate at the hearing "may be harsh," it explained that "we have accommodated her multiple times already in allowing continuances for transportation and that if we continue . . . to do that, we would never have this matter resolved." The trial court noted that the case had been pending for almost two years and that, "We are way over when we should have had [the case] resolved." After the trial court denied Mother's request to participate by telephone or Zoom, her attorney made an oral motion for continuance, which the trial court denied.

From Mother's statement of the issue, *supra*, and the argument section of her appellate brief, it is clear that she does not take issue with the trial court's denial of the motion to continue. Rather, Mother specifically asserts that the trial court's denial of her request to participate by telephone or video resulted in a violation of due process. As set out in context above, Mother specifically argues that the trial court's denial of the request "that Mother be allowed to appear by video means at the second and final day of trial" resulted in denial of Mother's due process "right to be heard before being condemned to suffer grievous loss—the termination of the parental rights to her children . . . ." Therefore, we will limit our discussion to whether the trial court violated Mother's due process rights in denying her participation by telephonic or video means.

In her brief, Mother states that "she was not permitted to attend" the February 20, 2023 hearing. As noted by Appellees, this statement is not correct. Contrary to her

- 9 -

position, Mother was not barred from attending; she was ordered to attend. As set out in its September 6, 2022 order, the trial court granted a continuance "in order to allow [Mother] **to participate in person**" (emphasis added). The trial court's order goes on to caution that if Mother "fails **to appear** at the next scheduled hearing, **her lack of transportation will not be considered a valid reason for her not appearing**" (emphases added). Again, the trial court tells Mother "to appear," and goes on to caution her that it will not consider "**transportation**" problems to be a valid reason for Mother "not **appearing**." (Emphases added). The trial court's order then instructs Mother that she has "enough notice between now and the scheduled hearing date to make appropriate **transportation arrangements to secure her attendance at the hearing**" (emphasis added). From the foregoing portions of the trial court's September 6, 2022 order, the only inference is that Mother is required to be physically present at the next hearing, and that any issue with transportation will not excuse her absence. So, having received notice of the September 6, 2022 order, Mother knew, or should have known, that her physical presence was required at the next hearing. However, to emphasize its ruling, the trial court forewarned Mother that if she "does not **appear**, this court will consider that [*i.e.*, her failure to appear] as a waiver of her rights to participate at the hearing." Yet, despite these clear mandates, at the scheduled hearing on February 20, 2023, Mother's attorney announced that Mother had informed her that Mother could not appear because of alleged transportation issues.

Now, on appeal, Mother asserts that her due process rights were usurped when the trial court enforced its September 6, 2022 order and, in Mother's absence, waived her right to participate at the hearing. Of course, "[d]ue process is a flexible concept that 'calls for such procedural protections as the particular situation demands.'" *In re Trinity S.*, No. E2021-00098-COA-R3-PT, 2021 WL 3486188, at *3 (Tenn. Ct. App. Aug. 9, 2021) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). However, "[t]he basic principle of due process . . . 'is that individuals be given an opportunity to have their legal claims heard at a meaningful time and in a meaningful manner.'" *Id.* (quoting *Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 407 (Tenn. 2013)). In this case, the principle is satisfied.

From our review, the trial court granted numerous continuances (a number of which were requested by Mother), and accommodated Mother's telephonic participation at some hearings. However, with the case still pending more than a year after Appellees filed their petition, the trial court entered a clear order on September 6, 2022 order.[4] As discussed

---

[4] Tennessee Code Annotated section 36-1-124(a) instructs that

[i]n all cases where the termination of parental rights or adoption of a child is contested by any person or agency, the trial court shall, consistent with due process, expedite the contested termination or adoption proceeding by entering such scheduling orders as are necessary to ensure that the case is not delayed, and such case shall be given priority in setting a final hearing of the proceeding and shall be heard at the earliest possible date over all other civil litigation other than

- 10 -

above, the trial court mandated Mother's in-person attendance at the hearing. Also, as discussed above, Mother was cautioned that transportation issues would not be considered as a reason for her absence. Yet, despite these clear instructions, Mother did not appear at the hearing and gave the excuse that she had no available transportation. In short, the trial court put down a clear order, and Mother failed to abide by it. We conclude that in waiving Mother's right to participate at the hearing, the trial court was simply enforcing its order. ***Rocco v. Cicalla***, 59 Tenn. 508, 512 (1873) ("The court has the power to enforce its orders."). In this regard, Mother's argument that she was denied due process is disingenuous. Mother was granted ample opportunity to fully participate in this matter. Indeed, throughout these proceedings, the trial court made numerous accommodations to ensure her participation. Finally, the trial court entered a clear order, which Mother seemingly ignored. As such, we conclude that there is no due process violation. Mother's absence from the second day of hearing rests solely on her decision to violate the trial court's order. Having determined that there is no ground for reversal on the question of due process, we now turn to review the trial court's termination of Mother's parental rights.

### V. Grounds for Termination of Parental Rights
### A. Abandonment by Failure to Support and Visit

At the time of the filing of the petition to terminate Mother's parental rights, Tennessee Code Annotated section 36-1-102(1)(A)(i) defined the ground of abandonment as follows:

> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or any amended petition to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child[.]

Section 36-1-102(1)(D) provides that, as used in the foregoing statute, "failed to support" or "failed to make reasonable payments toward such child's support" means

> the failure, for a period of four (4) consecutive months, to provide monetary support or the failure to provide more than token payments toward the support of the child. That the parent had only the means or ability to make small payments is not a defense to failure to support if no payments were made during the relevant four-month period.

Tenn. Code Ann. § 36-1-102(1)(D). "For purposes of this subdivision (1), 'token support'

child protective services cases arising under title 37, chapter 1, parts 1, 4 and 6.

- 11 -

means that the support, under the circumstances of the individual case, is insignificant given the parent's means." Tenn. Code Ann. §36-1-102(1)(B).

Concerning abandonment by failure to visit, the statute defines "failed to visit" as follows:

> For purposes of this subdivision (1), "failed to visit" means the failure, for the applicable time period, to visit or engage in more than token visitation. That the parent had only the means or ability to make very occasional visits is not a defense to failure to visit if no visits were made during the relevant time period;

Tenn. Code Ann. §36-1-102(1)(E). "For purposes of this subdivision (1), "token visitation" means that the visitation, under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child." Tenn. Code Ann. §36-1-102(1)(C).

Here, Appellees filed their petition to terminate Mother's parental rights on May 28, 2021. As correctly noted by the trial court in its order terminating Mother's parental rights, "[t]he four (4) consecutive months immediately preceding the filing of the Petition for Termination of Parental Rights was . . . from January 28, 2021, through May 27, 2021."

Concerning the ground of abandonment by failure to visit, the trial court found:

> The testimony and documentary evidence was undisputed that Mother failed to visit and failed to request to visit with the [C]hildren between January 28, 2021, and May 27, 2021. The Orders from the underlying dependency and neglect proceedings which were filed as exhibits in these proceedings granted Mother supervised visits with the [C]hildren on Sundays from 4:30 p.m. until 7:00 p.m. (February 19, 2020 Order), modified Mother's visits to Sundays before she went to work, with a confirmation 24 hours in advance (June 9, 2020 Order). The court had even ordered Mother to visit the [C]hildren regularly in the November 17, 2020 Order.
>
> Although the Order from the February 9, 2021 hearing recites that Grandmother had denied two recent visits, the Order does not contain when those denials occurred. The statutory period for abandonment for failure to visit began twelve (12) days prior to the February 9, 2021, hearing. The testimony of Grandmother during these proceedings was that no requests by Mother were denied during the statutory four month period or any other time with the exception of once in June, 2021.

- 12 -

Based on the foregoing findings, the trial court found clear and convincing evidence to terminate Mother's parental rights on the ground of abandonment by failure to visit. The record supports the trial court's holding.

Grandmother testified that, from February 2020 (when the Children came to live with Grandparents) until the August 5, 2022 hearing on the petition to terminate parental rights, Mother exercised in-person visitation eight times and FaceTime visits five times. However, during the relevant four-month period, Grandmother testified that Mother had no contact with the Children, to-wit:

> Q [to Grandmother]. So[,] from January 27, 2021, which was approximately four months before we filed this petition, until May 28th, 2021, when we filed this petition, had the [M]other had any in-person visitation with the girls:
>
> A. No.

From the testimony, Mother's last contact with the Children was a FaceTime visit in November 2020, and this testimony is unrefuted. Accordingly, there is clear and convincing evidence to support the trial court's termination of Mother's parental rights on the ground of abandonment by failure to visit.

> Concerning the ground of abandonment by failure to support, the trial court found:
>
> > The records from Child Support Enforcement which have been filed in these proceedings as Exhibit 4 reflect no payments of child support by Mother to the [G]randparents during the statutory period of January 28, 2021, through May 27, 2021. The testimony of Grandmother and Grandfather that they never received any support or in-kind assistance from Mother during the relevant time is consistent with the records from Child Support Enforcement and is found to be credible.
>
> In relevant part, Grandmother testified:
>
> > Q. During [the relevant four-month] timeframe, did [M]other pay any child support for the girls.
> > A. No.
> > Q. During the same timeframe, did the [M]other give you anything to give to the girls as an in-kind payment of the child support in any way?
> > A. No.

Grandmother's testimony is corroborated by Grandfather's testimony, to-wit:

> Q [to Grandfather]. Now, [Mother] was ordered to pay some child support?
> A. That's correct.

- 13 -

Q. Okay. And has, in terms of your knowledge, have you all received—well, from January 27th of 2021 until May 28th of 2021, did [Mother] pay any child support that you or that you received.

***

A. No, there was no payment.

As set out in its order, the trial court made an explicit finding that Grandparents' respective testimony was credible. The Tennessee Supreme Court has instructed:

> When credibility and weight to be given testimony are involved, considerable deference must be afforded to the trial court when the trial judge had the opportunity to observe the witnesses' demeanor and to hear in-court testimony. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997) (quoting *Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996)). Because trial courts are able to observe the witnesses, assess their demeanor, and evaluate other indicators of credibility, an assessment of credibility will not be overturned on appeal absent clear and convincing evidence to the contrary. *Wells v. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

*Hughes v. Metro. Gov't of Nashville and Davidson County*, 340 S.W.3d 352, 360 (Tenn. 2011). In addition to the credibility finding concerning Grandparents' testimony, the trial court correctly notes that Trial Exhibit 4, the Child Support Enforcement records, show no support payments during the relevant time period. From the foregoing, we conclude that there is clear and convincing evidence to support the trial court's termination of Mother's parental rights on the ground of abandonment by failure to support.

### B. Persistence of the Conditions that Led to the Children's Removal

The trial court also terminated Mother's parental rights on the ground of "persistent conditions." This ground applies when:

> (3)(A) The child has been removed from the home or the physical or legal custody of a parent or guardian for a period of six (6) months by a court order entered at any stage of the proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child, and:
> (i) The conditions that led to the child's removal still persist, preventing the child's safe return to the care of the parent or guardian, or other conditions exist that, in all reasonable probability, would cause the child to be subjected to further abuse or neglect, preventing the child's safe return to the care of the parent or guardian;
> (ii) There is little likelihood that these conditions will be remedied at an early

- 14 -

date so that the child can be safely returned to the parent or guardian in the near future; and

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable, and permanent home.

(B) The six (6) months must accrue on or before the first date the termination of parental rights petition is set to be heard.

Tenn. Code Ann. § 36-1-113(g)(3). Each element must be proven by clear and convincing evidence. *In re Valentine*, 79 S.W.3d at 550. This Court has explained that this ground applies "when, by court order, a 'child has been removed from the home or the physical or legal custody of a parent . . . for a period of six (6) months' as a result of a dependency and neglect petition." *In re Boston G.*, No. M2019-00393-COA-R3-PT, 2020 WL 2070399, at *6 (Tenn. Ct. App. Apr. 29, 2020); *see also In re D.V.*, No. E2018-01438-COA-R3-PT, 2019 WL 1058264, at *5 (Tenn. Ct. App. Mar. 6, 2019) ("The child must have been removed from the home or the physical or legal custody of a parent/guardian for a period of six (6) months by a court order entered following a petition alleging that the child is a dependent and neglected child."). "The necessary order of removal is 'the threshold consideration' for this ground." *In re Lucas S.*, No. M2019-01969-COA-R3-PT, 2021 WL 710841, at *4 (Tenn. Ct. App. Feb. 24, 2021) (quoting *In re Alleyanna C.*, No. E2014-02343-COA-R3-PT, 2015 WL 4773313, at *14 (Tenn. Ct. App. Aug. 10, 2015)). Here, these criteria are met by clear and convincing evidence. As discussed above, the Children were removed from Mother's custody by a protective custody order entered on February 19, 2020. By order of August 4, 2020, the trial court adjudicated the Children to be dependent and neglected based, *inter alia*, on Mother's stipulation that she failed to protect the Children from Father's abuse. As set out in context above, Mother specifically stipulated that, although she noticed bruising on the Children, she took no action. In the August 4 order, the trial court ordered Mother to continue in therapy, to complete a Clinical Parenting Assessment and to follow all recommendations thereof. In addition, Mother was prohibited from allowing Father to return to the home with the Children present. Mother was ordered to maintain a legal source of income, to pay support for the Children, and to visit them. During the pendency of the dependency and neglect case, Mother was not in compliance with these requirements. Furthermore, there is no evidence that she was in compliance with the foregoing requirements at the time of the hearing on the petition to terminate her parental rights. Moreover, there is evidence that "other conditions exist[ed] [at the time of the hearing on the petition to terminate parental rights] that, in all reasonable probability, would cause the [Children] to be subjected to further abuse or neglect, preventing the [Children's] safe return to the care of the parent []."

After the dependency and neglect case was closed, on May 20, 2022, Mother pleaded guilty to the offense of "failure to appear" in the Criminal Court of Sullivan County, and she was placed on probation for a period of 11 months and 29 days. On May

25, 2022, the criminal court found that Mother was in violation of the rules of her probation and extended the probation until May 20, 2023. The foregoing facts are not disputed.

> In its order terminating Mother's parental rights, the trial court found that Mother's failure to complete the requirements set out in the Final Order from the hearing on February 9, 2021, until the time of this trial presents little likelihood that those conditions will be remedied at an early date so that the [C]hildren can be safely returned to Mother's custody in the near future. Mother, herself is not requesting that custody should be returned to her. Mother had the opportunity to visit with the [C]hildren but did not take advantage of that opportunity. . . . Mother's failure to demonstrate her ability to meet the [C]hildren's needs, her failure to demonstrate that the [C]hildren are a priority in her life by exercising regular visitation and maintaining contact with the [C]hildren, by failing to comply with the rules of her probation . . . and her failing to timely complete a substance abuse treatment program would cause the [C]hildren to be subjected to further neglect in her custody, preventing the [C]hildren's safe return to the care of Mother. . . . The continuation of the parent and child relationship greatly diminishes the [C]hildren's chances of early integration into a safe, stable, and permanent home.

From our review, there is clear and convincing evidence to support the trial court's findings. Not only has Mother failed to comply with the trial court's orders, she has incurred additional criminal charges during the pendency of this case. In short, Mother has shown no urgency to change her lifestyle and little-to-no progress in rectifying the issues that led to the Children's removal. Furthermore, during the pendency of this case, Mother has engaged in behaviors that create additional hurdles toward reunification with the Children. As such, we agree with the trial court that there is little likelihood that these conditions will be remedied at an early date so that the Children can be safely returned to Mother in the near future. Furthermore, based on the Children's progress in Grandparents' home, *see further discussion infra*, "[t]he continuation of the parent . . . and child relationship greatly diminishes the [Children's] chances of early integration into a safe, stable, and permanent home." Accordingly, we conclude that there is clear and convincing evidence to support the trial court's termination of Mother's parental rights on the ground of persistence of the conditions that led to the Children's removal.

### C. Failure to Manifest an Ability and Willingness to Assume Custody
Under section 36-1-113(g)(14), parental rights may be terminated on the ground that:

> A parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and

physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[.]

If clear and convincing evidence demonstrates that a parent "has failed to manifest either ability or willingness, then the first prong of the statute is satisfied." ***In re Neveah M.***, 614 S.W.3d 659, 677 (Tenn. 2020). Here, the trial court held that:

> The first element of this statutory ground for termination of parental rights requires a finding that the parent has failed to manifest [] an ability and willingness to assume custody or financial responsibility of the [C]hildren. Mother has not ever suggested that she is ready for the custody of the [C]hildren to be returned to her and has never filed any pleadings requesting a return of the [C]hildren to her care. Mother was attending inpatient substance abuse treatment[, but she] has completed [only] phase 1 of the 3 phases of the program. Mother has not contributed to the financial support of the [C]hildren in the care of [G]randparents since a payment of $135.02 on February 7, 2022. The February 7, 2022 child support payment was her only contribution to the support of the [C]hildren in 2022. Prior to February 7, 2022, Mother's last payment of child support was on September 7, 2021. . . . Mother has had the opportunity to visit with the [C]hildren since the first Order was entered in the dependency and neglect proceedings, but she failed to take advantage of attending the visits she had the opportunity to have and left early on some of the visits she did attend by her choice.

> The court finds that there is clear and convincing evidence that Mother does not have the ability to assume custody or financial responsibility of the [C]hildren and has not demonstrated that she has the willingness to assume custody or financial responsibility of the [C]hildren. The first element of the statute has, therefore, been met.

We agree. For many of the reasons previously discussed, Mother has failed to demonstrate either an ability or a willingness to assume custody and financial responsibility for the Children. As such, the first prong of this ground is met by clear and convincing evidence.

As to the second prong of this ground, *i.e.*, that placing the Children in Mother's custody would pose a substantial risk of harm to their physical or psychological welfare, the trial court found:

> During the pendency of this case, Mother has failed to demonstrate stability. There is no proof that Mother completed more than phase 1 of [the] substance abuse treatment program, or completed any other substance abuse treatment program. Since the [C]hildren were removed from her custody, Mother has been incarcerated four (4) times in Sullivan County . . .

- 17 -

There is no proof that Mother has stable housing appropriate for herself and the [C]hildren and no proof that she has stable income sufficient to provide for herself and the [C]hildren. . . . Mother does not reside in the geographic vicinity of the area where the [C]hildren are residing with their [G]randparents.

The foregoing findings are supported by the evidence. At the time of the hearing on February 20, 2023, Mother's attorney explained that Mother was living in Baton Rouge, Louisiana. However, due to Mother's absence from the hearing, and the fact that Mother had not been in contact with Grandparents, the specific details of Mother's living arrangements, including any employment, are not in the record. However, based on the information that is contained in the record, including Mother's failure to visit, support, or inquire about the Children, there is substantial doubt as to her ability to parent them. Furthermore, Mother apparently has no reliable means of transportation. Moreover, Grandmother testified that, to her knowledge, Mother moved to Louisiana to live with a paramour. However, due to the lack of communication, Grandmother did not know the specifics of Mother's arrangement. Regardless, as the trial court found,

The children have been in a safe and stable home with their [] [G]randparents for almost 3 years. . . . The Court finds that to disrupt the [C]hildren from this secure, loving placement with their [G]randparents in the home where they have lived most of their lives and placing custody with Mother who has not visited with them . . . or even had a FaceTime call with them since November 15, 2020, would pose a risk of substantial harm to the physical or psychologic welfare of these young [C]hildren.

From the totality of the circumstances, there is sufficient evidence to support the trial court's finding that placing custody with Mother would pose substantial risks of harm to the Children. In short, there is clear and convincing evidence to support the trial court's termination of Mother's parental rights on this ground.

## VII. Best Interests

Tennessee Code Annotated section 36-1-113(i)(1) contains a non-exclusive list of factors applicable to the court's best-interests analysis. The statute provides:

(i)(1) In determining whether termination of parental or guardianship rights is in the best interest of the child, the court shall consider all relevant and child-centered factors applicable to the particular case before the court.

The statutory factors are not exclusive but "illustrative . . . and any party to the termination proceeding is free to offer any other factor relevant to the best[-]interests analysis." **In re Gabriella D.**, 531 S.W.3d 662, 681 (Tenn. 2017) (citation omitted). Whether termination

is in the child's best interest must be "'viewed from the child's, rather than the parent's, perspective.'" *Id.* (quoting *In re Audrey S.*, 182 S.W.3d at 878). "[W]hen the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child[.]" *Id.* (quoting Tenn. Code Ann. § 36-1-101(d) (2017)). The court's "'focus on the perspective of the child is the common theme' evident in all of the statutory factors." *In re Neveah M.*, 614 S.W.3d 659, 679 (Tenn. 2020) (quoting *In re Audrey S.*, 182 S.W.3d at 878).

The trial court's best-interest analysis requires "more than a 'rote examination' of the statutory factors." *In re Neveah M.*, 614 S.W.3d at 679 (quoting *In re Audrey S.*, 182 S.W.3d at 878). Further, it "consists of more than tallying the number of statutory factors weighing in favor of or against termination." *Id.* (citing *White v. Moody*, 171 S.W.3d 187, 193-94 (Tenn. Ct. App. 2004)). Although the court must consider all the statutory factors and other relevant proof, some factors may weigh more heavily than others in light of the circumstances surrounding the particular child and parent. *Id.* (quotation omitted). Indeed, the trial court "may appropriately ascribe more weight—even outcome determinative weight—to one statutory factor or rely upon fewer than all of the statutory factors." *Id.* (citation omitted).

The trial court's factual findings relevant to the best-interest analysis must be supported by a preponderance of the evidence. *In re Kaliyah S.*, 455 S.W.3d at 555 (citation omitted). Additionally, the court must determine whether the combined weight of the facts amounts to clear and convincing evidence that termination of parental rights is in the child's best interest. *Id.* (citation omitted). As noted above, we review the trial court's best-interest analysis under the standard of review applicable to mixed questions of fact and law. *In re Taylor B.W.*, 397 S.W.3d at 112-113. We will affirm the trial court's factual findings unless they are unsupported by a preponderance of the evidence. *In re Neveah M.*, 614 S.W.3d at 674 (citations omitted). Whether the court's factual findings amount to clear and convincing evidence that termination of parental rights is in the child's best interest is a question of law that we review *de novo* with no presumption of correctness. *Id.* (citations omitted).

In terminating Mother's parental rights, the trial court considered the statutory factors set out below and made the following findings concerning each:

> (A) The effect a termination of parental rights will have on the child's critical need for stability and continuity of placement throughout the child's minority; [Tenn. Code Ann. § 36-1-113(i)(1)(A)]

Concerning this factor, the trial court found:

> [This factor] weighs in favor of termination of . . . Mother['s] because [she] has [not] demonstrated the ability to provide stability and continuity of

- 19 -

placement throughout the [C]hildren's minority. Mother has been incarcerated 4 times for a total of 144 days since the [C]hildren were adjudicated dependent and neglected in her custody. . . . Mother moved to Nashville to attend a substance abuse treatment program upon her release from her most recent period of incarceration in May, 2022, but is no longer living in Nashville. Mother has not provided the stability of visiting with the [C]hildren on a regular basis. . . . there is no proof that [Mother] has a stable home.

(B) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological, and medical condition; [Tenn. Code Ann. § 36-1-113(i)(1)(B)]

As to this factor, the trial court found:

These young [C]hildren have been residing in their [G]randparents' home for the past 3 years of their lives and have been receiving loving care from their [G]randparents during that time. The [C]hildren were 6 months old and 22 months old when the dependency and neglect proceedings began and they are now 3 ½ years old and almost 5 years old. The [C]hildren were sick when they first came to [G]randparents' home and needed medical attention which they had not received while with [Mother]. They have lived with their [G]randparents the majority of their lives and are healthy and flourishing in their care. Mother has failed to provide the stability of visiting with the [C]hildren . . . . The [C]hildren have a healthy emotional attachment to their [G]randparents as their caregivers, which they do not have with Mother . . . .

(C) Whether the parent has demonstrated continuity and stability in meeting the child's basic material, educational, housing, and safety needs; [Tenn. Code Ann. § 36-1-113(i)(1)(C)]

Here, the trial court found:

[Mother[ . . . has not demonstrated continuity and stability in meeting the [C]hildren's basic material, educational, housing, and safety needs. There is no proof that Mother has met any of the [C]hildren's physical needs since the [C]hildren were removed from her custody in February, 2020. Mother has provided little financial contribution or assistance for the [C]hildren . . . . Mother has not provided any in-kind assistance for the [C]hildren. The [C]hildren's lives cannot stand still and wait for [Mother] to be ready. These young [C]hildren have needs now for continuity and stability which are being met by their [G]randparents and not their Mother.

(D) Whether the parent and child have a secure and healthy parental attachment, and if not, whether there is a reasonable expectation that the parent can create such attachment; [Tenn. Code Ann. § 36-1-113(i)(1)(D)]

Regarding this factor, the trial court found:

[Mother does not have] a secure and healthy parental attachment. The [C]hildren were removed from Mother's custody due to her stipulation that she failed to protect [them] from the physical abuse of Father. Mother has not visited with the [C]hildren . . . .

(E) Whether the parent has maintained regular visitation or other contact with the child and used the visitation or other contact to cultivate a positive relationship with the child; [Tenn. Code Ann. § 36-1-113(i)(1)(E)]

Concerning this factor, the trial court reiterated its finding that Mother has not visited with the Children, and that there is no bond between Mother and the Children.

***

(H) Whether the child has created a healthy parental attachment with another person or persons in the absence of the parent; [Tenn. Code Ann. § 36-1-113(i)(1)(H)]

Here, the trial court found that the Children

have created a healthy parental attachment with their [G]randparents in the absence of . . . Mother. Their [G]randparents have provided care for the [C]hildren during the majority of their lives. There is no evidence that Mother and the [C]hildren have a secure and healthy parental attachment. Mother has not taken advantage of the opportunities she had for visits with her [C]hildren to maintain the parent/child relationship.

***

(J) Whether the parent has demonstrated such a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the child to be in the home of the parent, including consideration of whether there is criminal activity in the home or by the parent, or the use of alcohol, controlled substances, or controlled substance analogues which may render the parent unable to consistently care for the child in a safe and stable manner; [Tenn. Code Ann. § 36-1-113(i)(1)(J)]

Concerning this factor, the trial court found that Mother

> has not demonstrated a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the [C]hildren to be in her home. There is no proof that Mother has an appropriate home for the [C]hildren or that she has maintained a meaningful parent-child relationship with the [C]hildren. Mother's last known address was a substance abuse treatment program in Nashville although her attorney has reported that Mother is now in Louisiana. Mother has been incarcerated four separate times. . . for a total of 144 days. The Court finds that Mother has failed to demonstrate a lasting adjustment of circumstance, conduct or conditions that make it safe and beneficial for the [C]hildren to be in her home.
>
> (K) Whether the parent has taken advantage of available programs, services, or community resources to assist in making a lasting adjustment of circumstances, conduct, or conditions; [Tenn. Code Ann. § 36-1-113(i)(1)(K)]

Here, the trial court found that

> There is no proof that Mother has completed any substance abuse treatment program, which was recommended by [DCS] for Mother since the filing of its initial petition . . . . Although Mother completed "phase 1" of [a program] in Nashville . . . there are two additional mandatory phases in order to complete the program. Mother has submitted very recent clean drug screens from an IOP program in Louisiana, but there is no other information about her admission or participation in that program other than she took a drug screen there. Completion of substance abuse treatment for Mother was ordered by the court in Mother's adjudicatory hearing on August 7, 2020, as well as by the Criminal Court of Sullivan County . . . in May, 2022. Mother's completion of substance abuse treatment would be necessary to remedy some of the reasons which led to the custody of the [C]hildren being removed form her and in her making a lasting adjustment of circumstances, conduct or conditions.
>
> ***
>
> (M) Whether the parent has demonstrated a sense of urgency in establishing paternity of the child, seeking custody of the child, or addressing the circumstance, conduct, or conditions that made an award of custody unsafe and not in the child's best interest; [Tenn. Code Ann. § 36-1-113(i)(1)(M)]

Concerning this factor, the trial court found that "the [C]hildren have not resided with [Mother] in three years. [Mother has not] evidenced a sense of urgency in seeking custody

. . . or addressing the conditions that resulted in . . . custody . . . being granted to the [G]randparents."

***

     (O) Whether the parent has ever provided safe and stable care for the child
     or any other child;

The trial court found that this factor weighed in favor of termination of Mother's parental rights because "it is clear that [Mother] has [not] provided safe and stable care for the [C]hildren since February 7, 2020."

     (P) Whether the parent has demonstrated an understanding of the basic and
     specific needs required for the child to thrive;

Again, the trial court found that this factor weighed in favor of termination insofar as "Mother acknowledged during the adjudicatory hearing in the underlying dependency and neglect proceedings that she failed to protect the [C]hildren from abuse by Father." As such, the trial court concluded that Mother "had an understanding of the basic and specific needs required for the [C]hildren to thrive, but also understood that she was not able to provide those needs for the [C]hildren."

     (Q) Whether the parent has demonstrated the ability and commitment to
     creating and maintaining a home that meets the child's basic and specific
     needs and in which the child can thrive;

Here, the trial court reiterated that Mother "has not demonstrated the ability and commitment to creating and maintaining a home that meets the [C]hildren's basic needs and in which they can thrive." The court further noted that "Mother has not demonstrated even the ability and commitment to attending visitation regularly . . . in order to maintain a relationship with [the Children]." As such, the trial court concluded that "Mother has not demonstrated that she has established a safe and stable home for the [C]hildren or that she even has stability in her own life."

***

     (S) Whether the parent has consistently provided more than token financial
     support for the child;

As to this factor, the trial court again noted that Mother "has not consistently provided financial support to the [G]randparents for the [C]hildren."

     (T) Whether the mental or emotional fitness of the parent would be
     detrimental to the child or prevent the parent from consistently and
     effectively providing safe and stable care and supervision of the child.

The trial court held that this factor weighed in favor of termination of Mother's parental rights

> In that it is undisputed that she has struggled with substance abuse issues during this case. She was hospitalized prior to the hearing on February 9, 2021, for acute alcohol use and anxiety. In May, 2022, she was ordered by the Criminal Court . . . to complete [substance abuse treatment]. This Court ordered her to complete substance abuse treatment when the [C]hildren were adjudicated dependent and neglected . . . . Her on-going substance abuse problems would prevent her from consistently and effectively providing safe and stable care and supervision of the [C]hildren.

From our review, the trial court's best-interest findings are supported by the record. The Children have lived with Grandparents since they were 6 months and 22 months old, respectively. During this time, Mother has had only minimal and sporadic contact with the Children, and the record supports the trial court's finding that she does not have a parental bond with them. It is undisputed that Mother has no steady means to support or house the Children. This situation will likely continue as Mother has not resolved her criminal legal issues. In short, Mother has expressed no real desire, much less any urgency, to assume custody. Meanwhile, the Children are thriving in the Grandparents' home. They have strong bonds with other family members, and are involved with their friends. They enjoy community activities, including swimming and soccer. Early integration into the only stable home the Children have ever known would only be stymied by the continuation of Mother's parental rights. In view of the circumstances, we conclude that there is clear and convincing evidence to support the trial court's findings as to each of the foregoing factors. The combined weight of those findings clearly and convincingly supports the trial court's ultimate determination that termination of Mother's parental rights is in the Children's best interest.

## VIII. Conclusion

For the foregoing reasons, the trial court's order is affirmed. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellant, Olivia D. Because Olivia D. is proceeding *in forma pauperis* in this appeal, execution for costs may issue if necessary.

             s/ Arnold B. Goldin

             ARNOLD B. GOLDIN, JUDGE